1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH BROWN,

          Plaintiff,

    v.

JAMES MATTIS, Secretary of Defense;[1]
UNITED STATES DEPARTMENT OF
DEFENSE,

          Defendants.

No.  2:15-cv-26-JAM-EFB PS

ORDER AND FINDINGS AND
RECOMMENDATIONS

      This case was before the court on October 26, 2016, for hearing on defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) (ECF No. 22), and plaintiff's motion for sanctions pursuant to Rule 11 (ECF No. 25).[2]  Assistant United States Attorney Philip Scarborough appeared on behalf of defendants; plaintiff appeared pro se.  For the following reasons, plaintiff's motion for sanctions is denied and it is recommended that defendants' motion to dismiss be granted.

---

[1] On January 20, 2017, James Mattis became the Secretary of Defense.  Pursuant to Federal Rule of Civil Procedure 25(d), James Mattis is substituted as defendant in place of Ashton Carter, the former Secretary of Defense.

[2] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

1    I.       Defendants' Motion to Dismiss

2           A.       Background

3                  1.       First Amended Complaint's Factual Allegations

4           This action proceeds on plaintiff's first amended complaint, which purports to assert

5    claims against the United States Department of Defense and James Mattis, the Secretary of

6    Defense.  ECF No. 16.  Plaintiff, a 58 year old African American male, was previously employed

7    as a federal police officer with the Defense Logistics Agency ("DLA") who had his security

8    clearance revoked.  *Id*. ¶¶ 25, 26.

9           Plaintiff alleges that throughout his employment with the DLA he received fully

10   successful performance ratings with exceptional rankings from his superiors.  *Id*. ¶ 27.  However,

11   on November 19, 2012, things changed.  He was cited by a California Highway Patrol officer for

12   having tinted windows and an expired vehicle registration.  *Id*. ¶ 37.  In light of the circumstances

13   of that traffic stop, the DLA opened an investigation regarding the traffic citations and plaintiff

14   was placed on administrative duties.  *Id*. ¶¶ 39, 40.  Shortly thereafter, District Attorney's office

15   notified the DLA that a criminal complaint was filed against plaintiff charging him with three

16   felonies.  *Id*. ¶ 42.  Specifically, plaintiff was charged with theft of a vehicle, receiving stolen

17   property, and vehicle license forgery.  Defs.' Req. for Judicial Notice ("RJN"), Ex. A.[3]  Based on

18   that criminal complaint, the agency suspended plaintiff's employment without pay, denied him

19   physical access to DLA's building, revoked his security clearance, and ultimately terminated his

20   employment.  ECF No. 16 ¶¶ 45, 49, 45.  According to the complaint, that criminal complaint,

21   /////

22   /////

23   _____

24          [3]  Defendants' request for judicial notice of state court documents and decisions issued by
     the Merit System Protection Board (ECF No. 23) is granted.  *See* Fed. R. Evid. 201; *U.S. ex rel*
25   *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (district
     courts may "take notice of proceedings in other courts, both within and without the federal
26   judicial system, if those proceedings have a direct relation to matters at issue."); *Anderson v.*
     *Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts "may take judicial notice of records and
27   reports of administrative bodies.") (quotations omitted).  Plaintiff's request for judicial notice of
     numerous appellate courts opinions (ECF No. 26) is denied as unnecessary.  The court may
28   consider these authorities without judicially noticing them.

1  which formed the basis of disciplinary actions in dispute here, was subsequently dismissed.[4]

2  *Id.* ¶ 57.

3      Although the DLA contends that the revocation of the security clearance and the

4  disciplinary actions of which plaintiff complains were the result of the information obtained from

5  the state criminal charges, the crux of plaintiff's complaint is that the various disciplinary

6  decisions directed at him were motivated by race and age discrimination.  He contends that the

7  discipline he received was disproportionate to the discipline administered to other non-African

8  American DLA police officers under the age of 40 for similar conduct.  *Id.* ¶¶ 1-8.  He also claims

9  that he was denied multiple promotions based on discrimination, and that he was defamed,

10  libeled, and slandered by statements related to the disciplinary events.  *Id.* ¶¶ 9-19.

11      He asserts claims styled as (1) race discrimination under Title VII; (2) age discrimination

12  under the Age Discrimination Act of 1967; (3) "harmful procedural error;" and (4) violation of

13  his due process rights under the Fifth Amendment.  Although not identified as a separate cause of

14  action, the complaint contains numerous allegations accusing defendants of defaming plaintiff's

15  character.

16          2.      Proceedings Before the Merit Systems Protection Board

17      Plaintiff filed an appeal with the Merits Systems Protection Board ("MSPB") challenging

18  the agency's March 15, 2013 decision to suspend him indefinitely without pay.[5]  Declaration of

---

19

20      [4]  The underlying facts surrounding the traffic citation and related criminal complaint have
    not been fully presented to the court and remain unclear.  However, an administrative decision
21  submitted in support of defendants' motion suggests that plaintiff did not steal a vehicle, but
    instead placed California license plates registered to a different vehicle on an unregistered vehicle
22  he had acquired from out of state.  *See* RJN Ex. F.

23      [5]  In *Elgin v. Department of Treasury*, 567 U.S. 1 (012), the United States Supreme Court
24  succinctly described the administrative procedures available under the Civil Service Reform Act
    ("CSRA") to federal employees challenging adverse employment decisions:

25          The Civil Service Reform Act of 1978 (CSRA) established a
            comprehensive system for reviewing personnel action taken against
26          federal employees. . . . Employees entitled to review are those in
            the "competitive service" and "excepted service" who meet certain
27          requirements regarding probationary periods and years of service.
            The reviewable agency actions are removal, suspension for more
28          than 14 days, reduction in grade or pay, or furlough for 30 days or

1    Carl Eskew ISO Defs.' Mot. to Dismiss ("Eskew Decl.") ¶¶ 9-10, Exs. B-C.  In the meantime,

2    Carl Eskew, the Chief of Security and Emergency Services at the DLA's Defense Distribution

3    Depot San Joaquin, forwarded information regarding the criminal charges to DLA Intelligence for

4    investigation and review of plaintiff's security clearance.  Eskew Decl. ¶ 11.  On June 11, 2013

5    (prior to resolution of the appeal), plaintiff's security clearance was suspended.  Eskew Decl.

6    ¶ 12; ECF No. 16 ¶ 54.

7         The following month, an MSPB Administrative Law Judge ("ALJ") issued an initial

8    decision, subsequently affirmed by the Board, that reversed plaintiff's indefinite suspension.  The

9    ALJ found that the criminal complaint, without more, was insufficient to sustain the indefinite

10   suspension.  RJN Exs. C, D.  The MSPB ordered the agency to cancel the suspension; reinstate

11   plaintiff effective April 1, 2013; and pay plaintiff back pay and other benefits.  RJN Ex. C at 10.

12   The agency complied and plaintiff's suspension was subsequently canceled.   He was returned to

13   his position, but because of the loss of the security clearance he was placed "in an administrative

14   leave status."  Eskew Decl. ¶ 11.  Plaintiff alleges that placing him in that status was also

15   motivated by discriminatory animus.  ECF No. 16 at 1-8.

16   /////

17   _____

     less.

18
                When an employing agency proposes a covered action against a
19           covered employee, the CSRA gives the employee the right to
             notice, representation by counsel, an opportunity to respond, and a
20           written, reasoned decision from the agency.  If the agency takes
             final adverse action against the employee, the CSRA gives the
21           employee the right to a hearing and to be represented by an attorney
             or other representative before the Merit Systems Protection Board
22           (MSPB).  The MSPB is authorized to order relief to prevailing
             employees, including reinstatement, backpay, and attorney's fees.
23
     Id. at 2130 (quotations and citations omitted).
24

25        When an employee seeks review of an agency's decision by the MSPB, the case may be
     referred to an Administrative Law Judge, who will issue an initial decision.  5 C.F.R. § 1201.111.
26   A dissatisfied party may seek review of the initial decision by filing a petition for review with the
     full Board.  5 C.F.R. § 1201.114.  Upon review, the Board may, among other things, issue a final
27   decision resolving the case.  5 C.F.R. § 1201.117.  However, if neither party seeks review, the
     initial decision will become the Board's final decision 35 days after its issuance.  5 C.F.R. §
28   1201.113.

In January 2014, the agency issued a decision to terminate his employment effective February 4, 2014. *Id.* ¶ 13-15, Exs. E-F. Plaintiff responded with anther MSPB appeal challenging his termination (RJN Ex. F), and an ALJ again reversed the agency's decision. The ALJ found that the agency violated plaintiff's due process rights by relying on evidence not identified in the notice of removal as the basis for terminating his employment.[6] *Id.* Consequently, plaintiff's removal was canceled, he was again restored to an administrative leave status, and he received back pay from the effective date of his termination. Eskew Decl. ¶ 16.

Plaintiff also filed two petitions with the MSPB seeking enforcement of its ruling. One sought enforcement of the order reversing his indefinite suspension and the other related to the decision reversing his termination. RJN Exs. E, G. He argued that the agency failed to comply with the MSPB's orders by refusing to return plaintiff to active duty, failing to reinstate certain benefits of employment, and improperly calculating his back pay and benefits. *Id.* The MSPB denied both petitions, finding that plaintiff had failed to demonstrate noncompliance. *Id.*

Although it appears that plaintiff was successful in obtaining reinstatement and back pay in his appeals before the MSPB, he nonetheless has filed a "mixed case"[7] in this court in which he asserts claims of race and age discrimination, alleged "harmful procedural error," and defamation. Defendants move to dismiss the action arguing that plaintiff's claims necessarily call into question the revocation of the security clearance and are therefore jurisdictionally barred. Defendants further argue that plaintiff's claims as to age discrimination and procedural errors before the agency are moot.

---

[6] The agency filed a petition for review of the ALJ's decision, which the Board dismissed as untimely. RJN Ex. H.

[7] "When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulations) to have brought a 'mixed case.'" *Kloeckner v. Solis*, 133 S.Ct. 596, 601 (2012). The CSRA grants district courts jurisdiction to review MSPB decisions involving mixed cases. 5 U.S.C. § 7703; *Kloeckner*, 133 S.Ct. at 601-02. Plaintiff's complaint does not explicitly request review of a particular MSPB decision. However, "[i]f the challenged conduct 'falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are [the employee's] only remedy." *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008). Accordingly, the court construes plaintiff's amended complaint as seeking judicial review of the MSPB's final decisions.

5

1     B.     Legal Standards

2          1.     Rule 12(b)(1)

3          On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction,  plaintiff bears

4    the burden of proof that jurisdiction exists.  *See, e.g., Sopcak v. Northern Mountain Helicopter*

5    *Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*,

6    594 F.2d 730, 733 (9th Cir. 1979).  Different standards apply to a 12(b)(1) motion, depending on

7    the manner in which it is made.  *See, e.g., Crisp v. U.S.*, 966 F. Supp. 970, 971-72 (E.D. Cal.

8    1997).   "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air For Everyone v.*

9    *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "asserts that the lack of subject

10   matter jurisdiction is apparent from the face of the complaint."  *Id.*  If the motion presents a facial

11   attack, the court considers the complaint's allegations to be true, and plaintiff enjoys "safeguards

12   akin to those applied when a Rule 12(b)(6) motion is made."  *Doe v. Schachter*, 804 F. Supp. 53,

13   56 (N.D. Cal. 1992).

14         Conversely, a factual attack challenges the truth of the allegations in the complaint that

15   give rise to federal jurisdiction.  If the motion makes a "factual attack" on subject matter

16   jurisdiction, often referred to as a "speaking motion," the court does not presume the factual

17   allegations of the complaint to be true.  *Thornhill*, 594 F.2d at 733.  In a factual attack, defendant

18   challenges the truth of the jurisdictional facts underlying the complaint.  "Faced with a factual

19   attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule

20   12(b)(6). . . . No presumptive truthfulness attaches to plaintiff's allegations, and the existence of

21   disputed material facts will not preclude the trial court from evaluating for itself the merits of

22   jurisdictional claims."  *Id*. (quotations and citation omitted).  The court may consider evidence

23   such as declarations or testimony to resolve factual disputes.  *Id.; McCarthy v. United States*, 850

24   F.2d 558, 560 (9th Cir. 1988).  "However, when 'ruling on a jurisdictional motion involving

25   factual issues which also go to the merits, the trial court should employ the standard applicable to

26   a motion for summary judgment.'  Under this standard, 'the moving party should prevail only if

27   the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

28   /////

1  matter of law.'" *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1558

2  (9th Cir. 1987) (quotations and citations omitted) (emphasis added).

3      Here, defendants present a facial attack.  The question raised by the defense can be

4  resolved by the allegations of the complaint itself and documents subject to judicial notice.

5  Accordingly, the court applies the Rule 12(b)(6) standards to this motion.

6                    2.    Rule 12(b)(6)

7      To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

8  must contain more than a "formulaic recitation of the elements of a cause of action"; it must

9  contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*

10  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

11  . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

12  action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

13  236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

14  'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)

15  (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual

16  content that allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged." *Id.*  Dismissal is appropriate based either on the lack of cognizable legal

18  theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v.*

19  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

20      In considering a motion to dismiss, the court must accept as true the allegations of the

21  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

22  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in

23  the pleader's favor. *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

24  (1969).  The court will "presume that general allegations embrace those specific facts that are

25  necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

26  (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

27      Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

28  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

1  1985).  The Ninth Circuit has held that the less stringent standard for pro se parties is now higher

2  in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally.

3  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, the court's liberal interpretation of

4  a pro se litigant's pleading may not supply essential elements of a claim that are not pled.  *Pena v.*

5  *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d

6  266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions

7  cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the

8  facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither

9  need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining*

10  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

11     In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by

12  exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.

13  1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr.*

14  *Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings,

15  orders, and other papers filed with the court, *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279,

16  1282 (9th Cir. 1986).

17     C.     Discussion

18     As noted, defendants argue that subject jurisdiction is lacking as to the majority of

19  plaintiff's claims, and that his factual allegations fail to state a claim as to the others.  ECF No.

20  22-1.

21          1.     Timeliness of Defendants' Motion

22     Plaintiff raises a threshold argument that the defendants' motion is untimely and should

23  not be considered.  ECF No. 24 at 27.  The argument lacks merit.  Defendants moved to dismiss

24  plaintiff original complaint on June 21, 2016.  ECF No. 13.  In response, plaintiff amended his

25  complaint pursuant to Rule 15 by filing a first amended complaint on June 29, 2016.[8]  ECF No.

26  16.  Defendants subsequently filed a timely motion for an extension of time to respond to the first

27

28     [8] Rule 15 permits a plaintiff to amend his complaint once as a matter of course within 21
days after service of an answer or a motion brought under Rule 12(b).  Fed. R. Civ. P 15(a)(1).

1    amended complaint.  ECF No. 18.  On July 7, 2016, the court denied defendants' motion to

2    dismiss the original complaint as moot, granted defendants' request for an extension of time, and

3    directed defendants to file a response to the first amended complaint by August 19, 2016.  ECF

4    No. 19.  Defendants timely filed the instant motion to dismiss on August 17, 2016.  ECF No. 22.

5              2.         Claims Related to the Revocation of Plaintiff's Security Clearance

6              Turning to the merits of defendants' motion, they first argue that the majority of plaintiff's

7    claims must be dismissed for lack of jurisdiction.  They note that these claims are dependent upon

8    a review of the decision to revoke plaintiff's security clearance, and any claims requiring review

9    of that decision are barred.  ECF No. 22-1 at 11-14.

10            In *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court held that the MSPB

11   lacks authority to review a decision denying an individual a security clearance, reasoning that

12   security clearance determinations are "sensitive and inherently discretionary" and are "committed

13   by law to the appropriate agency of the Executive Branch."  484 U.S. at 527-29.  *Egan* was

14   extended by the Ninth Circuit to also preclude judicial review of security clearance decisions,

15   finding that the reviewability of such decisions "applie[d] no less to the federal courts than to the

16   MSPB."  *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990).

17            *Egan* and *Dorfmont* have also been applied to preclude jurisdiction over a Title VII claim

18   alleging that a revocation of a security clearance was the result of race discrimination.  *Brazil v.*

19   *Dep't of Navy*, 66 F.3d 193 (9th Cir. 1995).  The court in *Brazil* explained that the resolution of

20   the Title VII claim would necessarily require an evaluation of whether the reasons for revoking

21   the security clearance were valid.  *Id*. at 197.  It explained that under the *McDonnell Douglas*[9]

22   burden-shifting framework, "[i]t is impossible for the court to establish in the first place whether

23   the Navy's proffered reasons were legitimate without evaluating their merits.  Even if the court

24   /////

_____

25            [9] *McDonnell Douglas v. Corp. v. Green*, 411 U.S. 792 (1973), established a three-part
      burden shifting test for evaluating discrimination claims.  Under this test, a plaintiff is required to
26   first establish a prima facie case of discrimination.  If the plaintiff establishes a prima facie case,
      the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its
27   decision.  Once the employer does so, the plaintiff then bears the burden of proving that the
      proffered reason is a pretext for discrimination.  *Id*. at 802-04.
28

1   were able to get by step two, it is very likely to be impossible for it to proceed to step three and

2   determine whether the given reasons were mere pretext without considering their merits." *Id.*

3         Here, plaintiff's amended complaint specifically claims that defendants' decision to

4   suspend his security clearance violated his right to due process and was based on harmful

5   procedural errors and discrimination in violation of Title VII and the Age Discrimination in

6   Employment Act ("ADEA").  ECF No. 16 ¶ 5.  As such, his claim is indistinguishable from

7   *Brazil* and his challenge is barred.

8         Plaintiff's claims related to his placement on administrative leave and denial of

9   promotions occurring after June 11, 2013—the date his security clearance was suspended—are

10  similarly barred.  A prerequisite to plaintiff resuming his positions as a police officer or receiving

11  a promotion was his holding of a valid security clearance.  Thus, resolution of these claims would

12  also require review of the merits of the decision to suspend plaintiff's clearance.  One necessarily

13  follows the other.  As explained by Carl Eskew, the Chief of Security and Emergency Services at

14  DLA's Defense Distribution Depot San Joaquin, the decisions to preclude plaintiff from entering

15  the DLA base, and to place him on administrative leave instead of returning him to his duties as a

16  police officer after the MSPB reversed the agency's decisions were based, at least in part, on

17  plaintiff's security clearance having been suspended.  Eskew Decl. ¶ 21.  He explains that all

18  DLA police officers are required to maintain at least a "Secret" level security clearance.  Eskew

19  Decl. ¶ 4.  Without his security clearance, plaintiff was not able to return to his job as a police

20  officer.  *Id.* ¶¶ 12, 21.  Consequently, he was placed on administrative leave and barred from

21  entering the DLA base.  *Id.* ¶ 21.  Mr. Eskew further states that plaintiff was not qualified for a

22  promotion to a Sergeant or Lieutenant, as one cannot hold those positions without a security

23  clearance.  *Id.* ¶ 22.

24        Review of these determinations necessitates an evaluation of whether defendants'

25  "proffered reasons [for suspending plaintiff's security clearance] were legitimate" or "whether the

26  given reasons were mere pretext."  *Brazil*, 66 F.3d at 197; *see Drazich v. Mubuz*, 20142014 WL

27  2069474 (N.D. Cal. May 16, 2014) (court lacked jurisdiction over plaintiff's discriminatory

28  termination claim where plaintiff "was terminated because his security clearance was revoked,

1  and the clearance was a requirement of his job.").  As the Ninth Circuit has explained in *Brazil*,

2  review of the clearance decision in this context is barred.  Therefore these claims must be

3  dismissed without leave to amend.[10]  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)

4  (while the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be

5  granted where it appears amendment would be futile).

6  3.   Age Discrimination in Employment Act of 1967

7  As with the Title VII claims, any of plaintiff's age discrimination claims that call into

8  question the revocation of his security clearance are also barred.  But defendants also argue that

9  the age discrimination claim related to the challenged disciplinary action is moot.   ECF No. 22-1

10  at 14-15 (noting plaintiff's successful appeal before the MSPB).  *Id.* at 16.[11]

11  "The doctrine of mootness, which is embedded in Article III's case or controversy

12  requirement, requires that an actual, ongoing controversy exists at all stages of federal court

13  proceedings."  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011).  A case is moot

14  "if events subsequent to the filing of the case resolve the parties' dispute."  *Id.* at 1087.  Under

15

16  [10]  On January 13, 2017, defendants requested leave to supplement the motion to dismiss,
which they noticed for hearing on February 15, 2017.  ECF No. 40.  That request and the
17  proposed supplement indicate that on December 20, 2016, the Department of Defense
Consolidated Adjudications Facility, which is responsible for reviewing security clearance
18  determinations, reinstated plaintiff's security clearance.  *See* ECF No. 40-2 at 2.  This additional
information does not alter the outcome of the pending motion.  *Egan* and its progeny make clear
19  that his court is without jurisdiction to review the merits of the agency's decision to revoke
plaintiff's security clearance.  While it might raise questions of mootness, the subsequent decision
20  to reinstate plaintiff's security clearance, even if predicated on a finding that it was wrongfully
removed, does not vest jurisdiction where it was lacking in the first place.
21

22  [11]  Plaintiff claims that adverse employment actions taken against him before the
suspension of his security clearance are not barred by *Egan.*  These include the November 21,
23  2012 and February 8, 2013 decisions to place him on administrative leave; an April 1, 2013,
decision to indefinitely suspend him without pay; and decisions to not promote him in 2011,
24  2012, and early 2013.  He alleges discrimination claims under Title VII and the ADEA and a
claim he describes as "harmful procedural error" as to these decisions. ECF No. 16 ¶¶ 1-4, 9-14.
25  Challenges to these decisions do not appear to be foreclosed by *Egan* as they occurred prior to the
security clearance suspension.  Defendants' move to dismiss the ADEA and "harmful procedural
26  error" claims premised on these decisions, *see* ECF No. 22-1 at 14-16, they do not move to
dismiss plaintiff's related Title VII claims.  Accordingly, the court declines to address the
27  sufficiency of plaintiff's Title VII claims related to these agency decisions.

28  11

1    such circumstances the court must dismiss the action because it does "not have the constitutional

2    authority to decide moot cases." *Id.*

3         Defendants observe that the decisions to indefinitely suspend plaintiff and remove him

4    from federal service were reversed by the MSPB and that plaintiff was awarded all available

5    remedies. ECF No. 22-1 at 8-9. Thus, defendants contend, plaintiff's age discrimination and

6    claim based on these disciplinary actions is now moot. *Id.* Indeed, it appears that plaintiff

7    already obtained any relief available on his age claim. Under the Age Discrimination in

8    Employment Act, relief "is limited to 'judgments compelling employment, reinstatement, or

9    promotion,' the recovery of unpaid minimum wages or overtime pay, and reasonable attorneys'

10   fees and costs." *Ahlmeyer v. Nevada Sys. of Higher Education*, 555 F.3d 1051, 1059 (9th Cir.

11   2009) (citing 29 U.S.C. §§ 216(b), 626(b)). Punitive damages and compensatory damages for

12   pain and suffering are not available under the ADEA. *Id.*

13        Plaintiff was successful in having his indefinite suspension and removal from his

14   employment overturned. On July 17, 2013, an Administrative Law Judge found that the decision

15   to indefinitely suspend plaintiff was based solely on the criminal complaint filed in state court,

16   and that such evidence alone was insufficient to support the decision. *See* RJN Ex. C. An ALJ

17   ordered "the agency to cancel the suspension and retroactively restore [plaintiff] effective April 1,

18   2013," and to pay plaintiff the appropriate amount of back pay. *Id.* at 8. That order was affirmed

19   by the MSPB. RJN Ex. D. Furthermore, the MSPB subsequently found that the agency complied

20   with its order "reversing the [plaintiff's] indefinite suspension and making the appellant whole."

21   RJN Ex. E, ¶ 6.

22        The MSPB also found that in terminating plaintiff's employment, the agency violated

23   plaintiff's procedural due process rights and ordered plaintiff returned to service and awarded

24   back pay. RJN Ex. F. Accordingly, the agency canceled plaintiff's removal and awarded him

25   back pay. RJN Ex. G. This demonstrates that plaintiff already received all the relief he is entitled

26   to under his ADEA claim. *Ahlmeyer*, 555 F.3d at 1059. But plaintiff argues that he was not

27   returned to duty as a police officer. Thus, he insists, he was not given back pay for overtime

28   hours he would have received had he been restored as a police officer. Thus, he argues, his age

1   claim is not moot.  ECF No. 24 ¶¶ 26, 28, 30, 31.  This argument cannot overcome the *Egan* bar.

2   As discussed above, having a security clearance is a prerequisite to assuming the duties of a

3   police officer and his argument calls into question the suspension or revocation of his security

4   clearance.  As such, it is barred.  *Brazil v. Dep't of Navy*, 66 F.3d at 197.

5          To be sure, the MSPB reversed the suspension without pay, but its initial decision

6   ordering cancellation of the indefinite suspension and retroactive restoration was not issued until

7   July 17, 2013.  RJN Ex. C.  By that time, plaintiff's security clearance had already been revoked.

8   Consequently, although he could be restored to some type of duty, he was barred from resuming

9   active duty as a federal police office.  Thus, while the MSPB could award back pay and direct a

10  return to service in some other capacity, it could not—nor could this court—order reinstatement

11  of a security clearance that would permit him to resume duties requiring such a clearance.  As the

12  determination "necessarily requires the court to perform some review of the merits of the security

13  clearance decision," the claim is barred for lack of jurisdiction.  *Brazil*, F.3d at 196.

14         Plaintiff next argues that these claims are not moot because defendants failed to "properly

15  restore" his Thrift Savings Plan account and withheld $21,760 of his back pay "for

16  unemployment earnings without providing the requisite proof to the Plaintiff and the MSPB [that]

17  the Defendants in fact repaid" that sum on money to the State of California.  ECF No. 24 ¶¶ 34-

18  35.  These new allegations, however, are raised only in plaintiff's opposition to defendants'

19  motion; the complaint itself is devoid of allegations concerning plaintiff's Thrift Savings Plan and

20  unemployment earnings.  Accordingly, they do not show that the claims in the complaint are not

21  moot.  *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (new allegations

22  presented in an opposition are irrelevant in evaluating the sufficiency of the claims); *Safe Air for*

23  *Everyone*, 373 F.3d at 1039 (once moving party has presented evidence refuting jurisdiction, the

24  opposing party must produce "evidence necessary to satisfy its burden of establishing subject

25  matter jurisdiction.").   They do, however, suggest that the dismissal of the claim should be with

26  leave to amend to allow plaintiff an opportunity to allege a claim that remains ripe for review.

27         Defendants further argue that plaintiff fails to state a claim for age discrimination based

28  on his allegations that he was wrongfully denied promotions.  ECF No. 22-1 at 16.  To state a

13

1    claim for violation of the ADEA, plaintiff must allege that he "was (1) at least forty years old, (2)

2    qualified for the position for which an application was submitted, (3) denied the position, and (4)

3    the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608

4    (9th Cir. 2012).

5         His complaint alleges that plaintiff is over forty (ECF No. 16 ¶ 25), but does not allege

6    that he was qualified for the positions he was denied.  In fact, plaintiff does not even allege that

7    he applied for the positions he was allegedly wrongfully denied.  Furthermore, plaintiff does not

8    identify the age of the individuals that were given the position.  *See* ECF No. 16 ¶¶ 9-14.  Rather,

9    he merely alleges that many of the individuals that were granted promotions were under the age

10   of 40.  *Id* ¶ 63(k).  This allegation is insufficient to show that the promotions were given to

11   individuals that were substantially younger than plaintiff.  Thus, he fails to allege claims for age

12   discrimination.  Accordingly, plaintiff's ADEA claim must be dismissed with leave to amend

13   granted only to the extent that an amended claim is not predicated on any challenges to the

14   suspension of plaintiff's security clearance.  *See Noll v. Carlson*, 809 F.2d at 1448.

15                    4.    Due Process

16        Plaintiff's fourth cause of action alleges that defendants violated his right to due process

17   under the Fifth Amendment.[12]  ECF No. 16 at 27-32.  The nature of this claim in the context of

18   this mixed Title VII/ADEA and MSPB appeal case is not entirely clear.  On the one hand,

19   plaintiff complains of alleged procedural errors during the MSPB proceedings.  On the other, he

20   seeks monetary damages for the alleged due process violations, suggesting a *Bivens* constitutional

21   tort claim.[13]  Any such claim is bared by the exclusivity of plaintiff's remedies before the MSPB.

22   Those remedies, established by the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–

23   454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) provide the exclusive

24   _____

25   [12]  Plaintiff's third cause of action, although designated as a claim for "harmful procedural
     error," is a claim that the agency did not afford him all the process he was due in reaching its

26   decisions to impose discipline.  *See* ECF No. 16 at 27-30.  Accordingly, the court construes
     plaintiff's third and fourth claims as a single procedural due process claim.

27   [13]  *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S.

28   388.

                                  14

1    route for plaintiff to address prohibited personnel actions. *Saul v. United States*, 928 F.2d 829,

2    833 (9th Cir. 1991).  The CSRA created an elaborate "framework for evaluating adverse

3    personnel actions against" federal employees and "[i]t prescribes in great detail the protections

4    and remedies applicable to such action, including the availability of administrative and judicial

5    review." *United States v. Fausto*, 484 U.S. 439, 443 (1988).  It is now well established that

6    "[w]hen allegedly unconstitutional conduct falls within the broad confines of the CSRA, courts

7    lack jurisdiction to hear a *Bivens* action based on the conduct." *Collins v. Bender*, 195 F.3d 1076,

8    1078 (9th Cir. 1999); *see also Saul*, 928 F.2d at 840 ("[T]he CSRA precludes even those *Bivens*

9    claims for which the act provides no alternative remedy.").  Thus, plaintiff's claim for monetary

10   damages premised on due process violations must be dismissed.

11          Plaintiff's fourth cause of action might also be read as an attempt to request review of the

12   MSPB decision based on alleged due process violations, raising the question of whether leave to

13   amend to clearly assert such a claim is appropriate.  He claims that his due process rights were

14   violated because he was never returned to the workplace and that the post-suspension and post-

15   removal processes were defective for a variety of reasons, including: the MSPB did not sanction

16   the DLA for discovery motion violations; the ALJ allowed DLA officials to commit perjury and

17   testify without providing documentation to support their testimony; and the DLA never provided

18   plaintiff with a statement explaining the amount of back pay he was entitled to receive.  ECF No.

19   16, ¶¶ 97-98.  Lastly, he alleges that the agency committed numerous procedural errors in

20   deciding to place him on administrative leave, suspending him without pay, not promoting him,

21   and terminating his employment. *Id.* ¶¶ 88-93.  But as defendants argue, plaintiff's due process

22   allegations necessarily fail because his own complaint and documents subject to judicial notice

23   demonstrate that plaintiff received all the process he was due.  ECF No. 22-1 at 17.  As noted

24   above, plaintiff not only availed himself of the opportunity to challenge his indefinite suspension

25   before the MSPB, he was successful in having it overturned.  RJN Exs. C, D.  Although he

26   quibbles with the extent of relief granted by the board, his own complaint shows that he was not

27   deprived of due process.  As argued by defendants, "[t]hese allegations show that Mr. Brown's

28   true gripe is that he did not get the particular outcome that he wanted at the MSPB . . . ."  ECF

                                            15

1    No. 22-1 at 17.  However, the allegations do not demonstrate that he was deprived of reasonable

2    notice and a meaningful opportunity to be heard.  *Brewster v. Bd. Of Educ. Of Lynwood Unified*

3    *Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Not only did he receive such process, he was

4    ultimately successful in challenging his removal.

5         Given that judicially-noticeable documents demonstrate that he was afforded due process,

6    the dismissal must be without leave to amend.  *See Noll v. Carlson*, 809 F.2d at 1448.

7              5.    Defamation

8         Plaintiff's complaint, without specifically saying so, vaguely suggests a claim for

9    defamation.  Defendants argue, among other things, that a defamation claim fails as a matter of

10   law due to plaintiff's failure to exhaust his administrative remedies under the Federal Tort Claims

11   Act.  ECF No. 22-1 at 18.

12        As a sovereign, the United States is immune from suit except according to its consent to

13   be sued.  *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).  It necessarily follows that where

14   Congress waives the immunity of the United States any terms and conditions that it places on the

15   waiver are jurisdictional and must be strictly construed.  *See Block v. North Dakota ex rel. Board*

16   *of Univ. and School Lands*, 461 U.S. 273, 287 (1983); *Jerves v. United States*, 966 F.2d 517, 521

17   (9th Cir. 1992).  Congress has waived the immunity of the United States for certain tort claims as

18   provided in the FTCA,[14] but only according to the terms and conditions set out in that statute.

19   As relevant here, those conditions include the administrative tort claim requirements.  28 U.S.C.

20   § 2675(a).  Thus, "[t]he requirement of an administrative claim is jurisdictional."  *Brady v. United*

21   *States*, 211 F.3d 499, 502 (9th Cir. 2000).

22        Although Congress has consented to suits against the United States under the FTCA, prior

23   to litigating a tort claim against the United States, a plaintiff must first file an administrative claim

24   with the appropriate federal agency.  28 U.S.C. § 2675(a).  Presentation of an FTCA claim must

25   be made within two years of the accrual of the claimant's cause of action.  28 U.S.C. § 2401(b).

26

27        [14]   The FTCA waives immunity to make the United States "liable to the same extent as a
     private party for certain torts of federal employees acting within the scope of their employment."
28   *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

1   A claim is deemed "presented" to the federal agency upon its receipt.  *See* 28 C.F.R. § 14.2(a);

2   *Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1251 (9th Cir. 2006) (mailbox rule does not apply to

3   FTCA cases).  A civil action may not be instituted until an administrative claim has "been finally

4   denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).

5   As noted, the administrative claim requirement under the FTCA is jurisdictional and cannot be

6   waived.  *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir.1995).  In addition, courts are

7   required to strictly construe the exhaustion requirement.  *Vacek*, 447 F.3d at 1250 (where

8   exhaustion conditions not satisfied, action may not proceed "merely because dismissal would visit

9   a harsh result upon the plaintiff.").

10          There is no indication from the record that plaintiff presented his an administrative tort

11   claim regarding his allegations of defamation with any federal agency.  Plaintiff's failure to

12   exhaust his administrative remedies deprives this court of subject matter jurisdiction over this

13   claim.  More significantly, even had he filed an administrative claim, the FTCA does not extend

14   to "any claim arising out of . . . libel . . . [or] slander . . . ."  28 U.S.C. § 2680(h).  As the United

15   States has not waived its immunity for claims of defamation, this claim must be dismissed with

16   prejudice for lack of subject matter jurisdiction.  *See Wilborn v. Napolitano*, 2012 WL 354494, at

17   * 9 (S.D. Cal. Feb. 2, 2012).

18   II.     Plaintiff's Motion for Sanctions

19          Plaintiff seeks sanctions against defendants pursuant to Rule 11, arguing that their motion

20   to dismiss mischaracterizes the facts of this case and that the declarations of Carl A. Eskew,

21   submitted in support of defendants' motion, contains false statements.  ECF No. 25.

22          "Rule 11 requires the imposition of sanctions when a motion is frivolous, legally

23   unreasonable, or without factual foundation, or is brought for an improper purpose."  *Conn v.*

24   *Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992).  "The central purpose of Rule 11 is to deter

25   baseless filings."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971

26   F.2d 244, 254 (9th Cir. 1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

27   /////

28   /////

17

1    An "improper purpose" is a purpose to "harass or to cause unnecessary delay or needless increase

2    in the cost of litigation." Fed. R. Civ. P. 11(b)(1). The test for improper purpose is an objective

3    one. *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).

4         Defendants' motion was not filed for an improper purpose. Rather, as explained above, it

5    presents meritorious arguments supporting the dismissal of plaintiff's first amended complaint.

6    Plaintiff's motion for sanctions lacks merit and is denied.

7    III.    Conclusion

8         Based on the foregoing, what remains of plaintiff's complaint are portions of his Title VII

9    claim concerning agency action that predate the suspension of his security clearance, which the

10   government did not move to dismiss. *See supra* note 11. All other claims must be dismissed.

11   However, plaintiff is granted leave to amend the portions of his purported ADEA claim that

12   would not barred by *Egan*, if he can allege sufficient facts in support of such a claim. *Lopez v.*

13   *Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (district courts must afford pro se

14   litigants an opportunity to amend to correct any deficiency in their complaints). Should plaintiff

15   choose to file an amended complaint, the amended complaint shall clearly set forth the allegations

16   against defendants and shall specify a basis for this court's subject matter jurisdiction. Any

17   amended complaint shall plead plaintiff's claims in "numbered paragraphs, each limited as far as

18   practicable to a single set of circumstances," as required by Federal Rule of Civil Procedure

19   10(b), and shall be in double-spaced text on paper that bears line numbers in the left margin, as

20   required by Eastern District of California Local Rules 130(b) and 130(c). Any amended

21   complaint shall also use clear headings to delineate each claim alleged and against which

22   defendant or defendants the claim is alleged, as required by Rule 10(b), and must plead clear facts

23   that support each claim under each header.

24        Additionally, plaintiff is informed that the court cannot refer to prior pleadings in order to

25   make an amended complaint complete. Local Rule 220 requires that an amended complaint be

26   complete in itself. This is because, as a general rule, an amended complaint supersedes the

27   original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Accordingly, once

28   plaintiff files an amended complaint, the original no longer serves any function in the case.

18

1    Therefore, "a plaintiff waives all causes of action alleged in the original complaint which are not

2    alleged in the amended complaint," *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.

3    1981), and defendants not named in an amended complaint are no longer defendants. *Ferdik v.*

4    *Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Finally, the court cautions plaintiff that failure to

5    comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order

6    may result in a recommendation that this action be dismissed.  *See* Local Rule 110.

7         Accordingly, it is hereby ORDERED that:

8         1.  Defendants' motion for leave to file a supplement to the motion to dismiss (ECF No.

9    40) is denied as moot; and

10        2.  Plaintiff's motion for sanctions (ECF No. 25) is denied.

11        Further, it is RECOMMENDED that defendants' motion to dismiss (ECF No. 22) be

12   granted as follows:

13        1.  Plaintiff's Title VII and ADEA claims be dismissed without leave to amend to the

14   extent they are predicated on agency action that occurred after June 11, 2013.  The balance of

15   plaintiff's age discrimination claim be dismissed with leave to amend.

16        2.  Plaintiff's defamation claim and due process claims (and related harmful procedural

17   error claim) be dismiss without leave to amend.

18        3.  Plaintiff be granted thirty days from the date of any order adopting these findings and

19   recommendations to file an amended complaint as provided herein.  The amended complaint must

20   bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

21   Should plaintiff fail to timely file an amended complaint, this action will proceed on plaintiff's

22   Title VII claim challenging defendants' conduct prior to the suspension of his security clearance.

23        These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

28   /////

within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 16, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

20